NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUBEN BUSTAMANTE, | |
| Plaintiff, | Civil Action No. 14-6729 (ES) |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**S**ALAS**, D**ISTRICT **J**UDGE

Before the Court is an appeal filed by *pro se* Plaintiff Ruben Bustamante ("Plaintiff" or "Claimant") seeking review of Administrative Law Judge Marissa Ann Pizzuto's ("ALJ" or "ALJ Pizzuto") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The Court has considered the submissions in support of and in opposition to Plaintiffs appeal and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I.  BACKGROUND

Plaintiff filed an application for DIB on June 22, 2012, alleging disability as of September 24, 2003, due to rheumatoid arthritis, knee problems, shoulder surgeries, right wrist and thumb surgery, renal problem and back hernia. (D.E. No. 8, Administrative Record ("Tr.") at 191–94, 209). The claim was initially denied on September 19, 2012, and again upon reconsideration on

1

March 18, 2013. (*Id.* at 115, 122). Plaintiff filed a written request on May 13, 2013 for a hearing before an ALJ. (*Id*. at 125–26).

On March 19, 2014, Plaintiff was represented and testified during a hearing before ALJ Pizzuto. (*Id.* at 81–98). Plaintiff testified, through an interpreter, that he had undergone multiple surgeries on his knees, shoulders and wrist. (*Id.* at 86-97). Additionally, he stated that his previous work experience included "cleaning [a] warehouse, painting, [and] assembling in a factory." (*Id.* at 87). In his various positions he was responsible for moving heavy items, including rows and pallets, assembling umbrellas and lamps, moving boxes, painting, operating machinery (e.g., a hi-lo machine), and cleaning. (*Id*. at 87–91). Plaintiff reiterated that he suffered from pain in his knees and lower back, as well as from "numbness through his neck, shoulders, and arm." (*Id.* at 86).

On May 30, 2014, the ALJ issued a decision finding that in "consideration of the factors described in 20 C.F.R. 404.1529(c)(3) and in Social Security Ruling 96-7p," Plaintiff did not qualify as disabled as defined by the Act. (*Id.* at 67–74). Thereafter, Plaintiff requested an Appeals Council review on June 28, 2014 (*id.* at 59), which was denied on August 28, 2014 (*id.* at 1).

Plaintiff appealed the Commissioner's decision by filing *pro se* a Complaint with this Court. (D.E. No. 1). The Court received the administrative record (D.E. No. 8), and the parties briefed the issues raised by the Plaintiff's appeal (*see* D.E. No. 13, Brief in Support of Ruben Bustamante filed on October 13, 2016 ("Pl. Br."); D.E. No. 15, Defendant's Brief Pursuant to Local Civil Rule 9.1 filed on November 28, 2016 ("Def. Br.")). The matter is now ripe for resolution.

## II.   LEGAL STANDARD

### A.  Standard for Awarding Benefits

To be eligible for DIB under Title II, a claimant must establish that he is disabled as defined by the Act.  *See* 42 U.S.C. § 423.  A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c).  Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled.  20 C.F.R. § 404.1520(a)(4).  If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends.  *Id.*  The burden rests on the claimant to prove steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1]  At step five, the burden shifts to the Commissioner.  *Id.*

*Step One.*  At step one, the claimant must demonstrate that he is not engaging in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit.  *Id.* § 404.1572(a), (b).  If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work

---

[1]   Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

experience. *Id*. § 404.1520(b). If the claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two.*** At step two, the claimant must demonstrate that his medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 404.1509.

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer*

4

*v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant lacks the RFC to perform any work he has done in the past, the analysis proceeds.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

### B. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand,

such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III. ALJ PIZZUTO'S DECISION

At step one of the analysis, ALJ Pizzuto determined that Plaintiff did not engage in substantial gainful activity ("SGA") during the relevant period from the alleged onset date of September 24, 2003 through his date last insured of December 31, 2008. (Tr. at 69).

At step two, the ALJ determined that Plaintiff suffered the "following severe impairments: impingement syndrome and/or synovitis status post surgery to right shoulder, and status post surgery to the bilateral knees." (*Id.*). These impairments were found to "cause more than minimal limitation in the claimant's ability to perform basic work activities." (*Id.*). The ALJ found,

however, that the alleged additional conditions of memory loss[2] and hypertension[3] were non-severe. (*Id.* at 69–70).

At step three, ALJ Pizzuto determined that Plaintiff did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 70). The ALJ specifically considered Listing 1.02 and found that "the medical evidence fail[ed] to establish that the claimant's condition r[ose] to the level of severity contemplated by that listing." (*Id.*). Additionally, the ALJ considered Plaintiff's body mass index (which approached "30") pursuant to SSR 02-1p, but determined "in the context of the overall record, there [was] no evidence demonstrating any additional or cumulative effects resulting from the claimant's obesity." (*Id.*).

At step four, the ALJ found in consideration of all symptoms that Plaintiff "had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." (*Id.*). ALJ Pizzuto followed a two-step process to evaluate all symptoms. (*Id.*). First the ALJ looked at "whether there [was] an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*). Then the ALJ "evaluate[d] the intensity, persistence, and limiting effect of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id.* at 70–71).

---

[2] Plaintiff contends that he suffers from memory loss related to a motorcycle accident in 1994. (*Id.* at 69). However, the ALJ found that Plaintiff did not demonstrate memory issues based on the following facts: (1) "Dr. Tellez simply diagnosed the claimant with 'post-traumatic stress syndrome due to the head injury years ago'" in 2000; (2) Dr. Tellez could not "render an opinion as to the claimant's ability to do work activities" in 2012; and (3) based on "the consultative examination, [where the claimant] was able to enumerate the various shoulder and knee surgeries that he underwent from 1990 to 2010 without issue." (*Id.*).

[3] The ALJ found that Plaintiff's hypertension was non-severe because it was "under control with medication." (*Id.* at 70).

7

ALJ Pizzuto determined that Plaintiff was "capable of light-level exertional work"[4] with some limitations based on the consistency of the record, objective medical evidence, opinion of Dr. Kern, and Plaintiff's statements. (Tr. at 72). The ALJ further noted that Plaintiff described his ability to complete daily activities, including daily hygiene, lifting up to ten pounds, and driving. (*Id.*).

At the final step, the ALJ determined that "[t]hrough the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.* at 73). At the date last insured, Plaintiff was defined as a "younger individual age [eighteen to forty-nine]" because he was forty-nine years old. (*Id.*) The ALJ found that due to Plaintiff's inability to communicate in English, Plaintiff was considered "an individual who [was] illiterate in English." (*Id.*). Although the ALJ found that Plaintiff was unable to perform work at medium/heavy levels similar to those in his previous relevant work experience as "an assembler, warehouse worker, maintenance worker, and painter," his RFC permitted him to work in a "full range of light work." (*Id.*). Additionally, ALJ Pizzuto noted Plaintiff's prior "unskilled" relevant work, which removed the issue of transferability of job skills. (*Id.*). Pursuant to the Medical-Vocational Rule 202.16, the ALJ determined that Plaintiff did not qualty as disabled. (*Id.*).

For the foregoing reasons, ALJ Pizzuto found that Plaintiff was not disabled under the Act from the period of September 24, 2003 through December 31, 2008. (*Id.* at 74).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## IV. DISCUSSION

On appeal, Plaintiff argues that ALJ Pizzuto's decision is not supported by substantial evidence. (Pl.'s Br. at 3–5). Plaintiff contends that the ALJ erred in finding him capable of "perform[ing] any work in the national economy on or before" the date last insured, December 31, 2008. (*Id.* at 3). Although Plaintiff did not identify which of the ALJ's steps he challenges on appeal, the Court construes Plaintiff's argument to contest steps four and five of the ALJ's analysis. *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). Plaintiff asks the Court to vacate the ALJ's decision and to award DIB from that date. (*Id.* at 5). For the reasons stated below, the Court rejects Plaintiff's contentions.

### A. The ALJ's RFC Determination was Supported by Substantial Evidence

At steps four and five, the ALJ must first establish Plaintiff's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96–8p, 1996 WL 374184, at *1–2. When determining the RFC of a claimant, the ALJ has a duty to consider all evidence before him, *Plummer*, 186 F.3d at 429, but the ALJ is required to include only a claimant's "credibly-established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Plaintiff argues that, in view of the entire medical record, he does not have the RFC "to return to any of his past relevant work as an assembler, building maintenance worker, warehouse worker, painter, and machine operator" on or prior to the date last insured. (Pl.'s Br. at 4). Plaintiff contends that he is, and was at the date last insured, incapable of performing previous relevant

work due to medical issues with his "hands, wrists, shoulders and knees," and thus should qualify as disabled and eligible for DIB. (*Id.*).

Defendant counters that ALJ Pizzuto's RFC determination was supported by substantial evidence because the ALJ reasonably evaluated the entire record and considered the medical evidence in conjunction with the opinions of Plaintiff's physicians and the state agency physicians. (Def. Br. 8–11). Defendant further responds that the Plaintiff failed to meet his burden of proof, as impairment alone is insufficient to prove disability and prohibit Plaintiff's ability to work. (*Id.* at 10).

The Court finds that ALJ Pizzuto's RFC determination is supported by substantial evidence. The ALJ thoroughly reviewed and relied on the claimant's testimony, objective medical evidence, and opinion evidence available in the record. (Tr. at 70–72). In doing so, ALJ Pizzuto articulated numerous reasons in support of her determination that Plaintiff was capable of "light work" based upon the RFC, and as such, was not disabled.

1. *Plaintiff's Testimony*

ALJ Pizzuto initially considered Plaintiff's testimony. (*Id.* at 71). The Plaintiff had testified that he underwent multiple surgeries for his shoulders, knees and wrist, both in the United States and in Columbia. (*Id.* at 86–97). He also stated that he worked in a variety of jobs, including as a painter, cleaner, and assembler, which he performed in a warehouse, factory, and school. (*Id.* at 87-92). Additionally, he testified that he has difficulty bending and standing, has inflammation in his hand, suffers from gout, and occasionally his knee "gives out." (*Id.* at 87-95). In his various prior jobs, he was responsible for moving heavy items, including rows and pallets, assembling umbrellas and lamps, moving boxes, painting, operating machinery (e.g., a hi-lo machine), and

cleaning. (*Id*. at 87-92). After surgery on his wrist, he testified that his doctor advised him that he could lift up to ten pounds. (*Id.* at 89).

However, a subjective complaint alone cannot establish disability; objective medical evidence must be provided. 20 C.F.R. §§ 404.1528(a), 1529(a); *see also Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x. 196, 199 (3d Cir. 2008). To that end, the ALJ must consider "all of the available evidence" when evaluating the intensity and persistence of a claimant's symptoms, including objective medical evidence and a claimant's statements about his symptoms. 20 C.F.R. § 404.1529(c)(1); *see also Hartranft*, 181 F.3d at 362 ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."). And an ALJ is not required to accept Plaintiff's testimony without question; the ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). As such, the ALJ then turned to objective medical evidence.

### 2. *Objective Medical Evidence*

Since 1990, Plaintiff underwent numerous surgeries, scans, and x-rays. (Tr. at 71). Considering the objective medical evidence, ALJ Pizzuto's RFC determination was supported by substantial evidence:

- On November 23, 1990, Plaintiff underwent arthroscopic surgery at St. Joseph's Hospital and Medical Center for his left knee due to a lateral meniscus tear. (*Id.* at 71, 276).

- In 1998, claimant underwent arthroscopic surgery on his right shoulder due to impingement syndrome on February 2nd, and then again on his right shoulder

11

due to partial rotator cuff tear, impingement syndrome, labral tear, and chondromalacia on November 25th.  (*Id.* at 71, 267, 272–75).

- Plaintiff then underwent arthroscopic surgery on his right knee for a medial meniscus tear on December 4, 2001.  (*Id.* at 264–65).

- A series of radiographic studies occurred on October 12 and November 26, 2002, which showed:

    o Right Knee: "[N]o evidence of fracture or dislocation, and no suprapatellar effusion.  No abnormality is noted." (*Id.* at 71, 294).

    o Lumbar Spine: "Examination shows normal lordotic curve of the lumbar spine.  The intervertebral spaces are unremarkable.  Very minimal osteophytes seen anteriorly of l4 vertebral body.  Both sacroiliac joints are symmetrical.  The visualized sacrum appears to be normal.  No evidence of degenerative changes or fracture, or dislocation.  Normal lumbar spine study." (*Id.* at 71, 292).

    o Right Shoulder: "The right shoulder examination shows a normal bony [sic] density.  No evidence of fracture or dislocation.  No evidence of arthritic changes.  No soft tissue calcifications." (*Id.* at 293).

    o Left Shoulder: Normal.  (*Id.* at 71, 293).

- On July 30, 2003, St. Joseph's Regional Medical Center: Grank X. Graves Family Health Center "Progress Notes" showed "the claimant as post status right shoulder rotator cuff tear with complaints of right hand numbness and tingling, and right knee pain.  Notations indicate that a shoulder MRI showed no evidence of a tear." (*Id.* at 71, 285).

- Based on an x-ray of claimant's left ribs on October 25, 2004, "[t]here [we]re non-displaced fractures involving posterolateral aspects of the left fifth and sixth ribs.  There is no evidence of left pneumothorax or pleural effusion." (*Id.* at 340).

### 3. *Opinion Evidence*

"The ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).  However, state agency physicians merit significant consideration in the disability analysis. *See* 20 C.F.R. § 404.1527(e)(2)(i) (stating that state agency physicians are "highly qualified" and "experts" in

12

social security disability evaluations). Upon consideration of Plaintiff's physician, as well as state agency consultants, the ALJ's finding that Plaintiff was capable of light work during the relevant period is supported by substantial evidence.

On two occasions, Plaintiff's physician "released him back to work with no restrictions" during the relevant period. (Def. Br. at 10). In 2004, after a slip and fall work-related accident that caused Plaintiff to fracture his ribs, Dr. Alvaro Tellez-Tellez ("Dr. Tellez") found Plaintiff unable to work from September 27, 2004 until November 8, 2004. (Tr. at 72, 335–36). However, "[n]o restrictions were noted" upon his return. (*Id.* at 72). Then in 2005, although Plaintiff was advised to rest beginning August 22, 2005 due to wrist tenosynovitis, Dr. Tellez prescribed a wrist splint and advised Plaintiff to return to work September 6, 2005. (*Id.* at 72, 337).

After his date last insured, Plaintiff obtained an orthopedic consultation from Dr. Hilary B. Kern on July 3, 2012. (*Id.* at 72, 321). During this consultation, Dr. Kern opined that (i) Plaintiff's "[l]eft hand and wrist pain and swelling may be consistent with diagnosis of gout"; (ii) Plaintiff's symptoms "[m]ay be suggestive of lumbosacral degenerative disk disease"; and (iii) there was no evidence of bilateral lumbosacral radiculopathy." (*Id.* at 323). Dr. Kern further assessed Plaintiff with "status post bilateral knee arthroscopic surgery for right knee medial meniscal tear/right knee patellofemoral syndrome" and "status post bilateral shoulder surgery likely from rotator cuff tear/subacromial decompression and mild bilateral shoulder impingement." (*Id.* at 72, 323). Dr. Kern added that Plaintiff could lift up to ten pounds in his left hand. (*Id.*). Furthermore, Dr. Kern found that Plaintiff experienced "mild-to-moderate distress due to his pain," particularly with "sit-to-stand transfers." (*Id.* at 322). Additional findings showed that Plaintiff

> ambulate[s] without an antalgic gait; had an intact heel/tow gait; had full range of motion (cervical/lumbar/bilateral knees/bilateral hips); mildly positive patellar grind (right) with tenderness with intact ligaments, and negative bilateral meniscal testing; showed wrist/hand (left) swelling, warmth, and decreased passive range of

13

motion and tenderness over left digits/MCP joints; had decreased left internal rotation; a mildly positive bilateral arc/impingement testing; and, negative bilateral straight leg raising.

(*Id.* at 72, 322-23).

When Plaintiff initially filed for DIB, Dr. Joseph S. Udomsaph, a state agency physician, examined Plaintiff on September 19, 2012 and determined that he was not disabled. (*Id.* at 99–104). Dr. Udomsaph opined that, based on the physical examination and a review of Plaintiff's records, Plaintiff experienced only "mild to moderate distress," which did not qualify as severe. (*Id.* at 101–03).

On March 18, 2013, at the reconsideration level, Dr. Hortensia Kelly[5] also opined that Plaintiff's osteoarthrosis and allied disorders were non-severe because they did not "significantly limit [Plaintiff's] physical or mental ability to do basic work activities."[6] (*Id.* at 110). Thus, Dr. Kelly found Plaintiff not disabled as of December 31, 2008. (*Id.* at 100–14). Furthermore, Dr. Kelly stated that Plaintiff could occasionally lift upwards of twenty pounds, while frequently lifting upwards of ten pounds. (*Id.* at 110–11). While Dr. Kelly found that Plaintiff was unable to return to past relevant work, he was capable of "light to medium" work. (*Id.* at 114). Thus, in considering the evidence, neither state agency physician found Plaintiff disabled under the Act.

When taken together, the ALJ appropriately considered the physicians' and state agency physicians' opinions. *See Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration as well.") (citing SSR 96-6p) ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f)

---

[5]  Dr. Kelly is also a state agency physician. (*Id.* at 105).

[6]  "Basic work activities" refers to the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of these include (i) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (ii) capacities for seeing, hearing, and speaking; (iii) understanding, carrying out, and remembering simple instructions; (iv) use of judgment; (v) responding appropriately to supervision, co-workers and usual work situations; and (vi) dealing with changes in a routine work setting. *Id.*

and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").  ALJ Pizzuto afforded "great weight to the opinion of Dr. Kern as it [was] consistent with the record, and the claimant's own advice that he [was] capable of light-level exertional work."  (Tr. at 72).

The ALJ determined that Plaintiff could not return to his previous relevant work, which would require handling a medium to heavy workload, but that Plaintiff maintained the RFC to "perform the full range of light work as defined in 20 C.F.R. 404.1567(b)."  (*Id.* at 70).  Thus, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

### B. The ALJ's Step-Five Analysis Properly Found Plaintiff as Not Disabled

When the ALJ determines that a claimant cannot perform the RFC of his previous relevant work, *see* 20 C.F.R. § 404.1545(a)(5)(ii), the ALJ must consider whether the claimant can adjust to other work available in the national economy.  20 C.F.R. § 404.1560(c)(1).  The ALJ must "consider[] your residual functional capacity and the vocational factors of age, education, and work experience."  (*Id.*).  The ALJ may apply the Medical-Vocational Guidelines in Appendix 2 ("Grid Rule")[7] to its analysis when "a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.

---

[7] "Appendix 2 provides rules using this data reflecting major functional and vocational patterns.  We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work.  (*See* § 404.1520(h) for an exception to this rule.)  The rules in appendix 2 do not cover all possible variations of factors.  Also, as we explain in § 200.00 of appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule.  In these instances, we give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations.  However, if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled."  20 C.F.R. § 404.1569.

Plaintiff contends that at step five the ALJ erred in determining that he could perform other work in the national economy "due to [his] physical and psychiatric limitations"[8] and should thus be found disabled. (Pl. Br. at 4). On the other hand, Defendant argues that "given the RFC of light work with no other exertional or non-exertional limitations," the ALJ properly applied the facts of this case to Grid Rule 202.16, finding Plaintiff not to be disabled. (Def. Br. at 11). Here, the ALJ properly found that Plaintiff could perform light-level work in the national economy. (Tr. at 73); *see also* 20 C.F.R. § 404.1569.

Despite determining that Plaintiff's RFC prevents him from returning to previous relevant work in the national economy at the filing date for Social Security Insurance on June 22, 2012, the ALJ found there was insufficient evidence of disability prior to December 31, 2008. (Tr. at 73, 109).[9] Additionally, Plaintiff did not contend other exertional or non-exertional limitations, aside from recounting the record. (*See* Pl. Br. at 4–5). The mere presence or diagnosis of an impairment is insufficient to produce a disability determination. *See* 20 C.F.R. § 404.1521. Furthermore, the ALJ considered the Plaintiff's self-report that he was capable of "tak[ing] care of his daily hygiene; engag[ing] in house or yard work for about two hours at one time; lift[ing] up to [ten] pounds; driv[ing]; shop[ping]; watch[ing] television; read[ing]; and, spend[ing] time with others." (Tr. at 72, 224–31).

Considering the RFC determination for "light work," as well as Plaintiff's age (forty-nine years old), education (considered illiterate in English), and previous work level (unskilled), the ALJ properly followed the Medical-Vocational Guidelines Rule 202.16 to find that he was "not

---

[8] ALJ Pizzuto addressed issues related to Plaintiff's psychiatric limitations at Step Two. (Tr. at 69); *see supra* note 2. For the reasons described in note 2, the ALJ found Plaintiff's mental capacity not to be a severe condition. These reasons equally apply to the step five analysis. (*Id.*).

[9] Dr. Kelly noted that at the June 22, 2012 filing date, Plaintiff would have met the requirements under Grid Rule 201.09 considering he reached the category of "approaching advanced age" (he was fifty-four years old), he had a limited education, and he was an unskilled laborer. (*Id.*); 20 C.F.R. pt. 404, subpt. P, Grid Rule 201.09.

disabled" at the date last insured. (*Id.* at 73); *see also* 20 C.F.R. §§ 404.1563, 404.1564, 404.1568, 404.1569; 20 C.F.R. pt. 404 subpt. P, app. 2, Grid Rule 202.16.[10]

## V. CONCLUSION

For the foregoing reasons, the Court hereby AFFIRMS ALJ Pizzuto's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[10]  Under Grid Rule 202.16, the claimant will be considered not disabled if he or she is considered a "younger individual," (*see* 20 C.F.R. 404.1563(c)) (stating that a person under fifty is considered a "younger person" and finding that age has less of an impact on a person's "ability to adjust to other work"); if he or she is illiterate in English (*see* 20 C.F.R. 404.1564(b)) (noting that an individual is considered illiterate under the education category if he or she cannot read or write in English); and previous work experience is "unskilled" (*see* 20 C.F.R. § 404.1568(a)) (defining unskilled work to require "handling, feeding and offbearing . . . or machine tending").

17